

# THE ATTORNEY GENERAL
## OF TEXAS

GERALD C. MANN



**ATTORNEY GENERAL**

Honorable James E. Kilday
Director, Motor Transportation Division
Railroad Commission of Texas
Austin, Texas

Dear Sir:

Opinion No. O-2795
Re: Whether a sales agent
must have permit or cer-
tificate in order to
lawfully deliver machin-
ery sold by him on a com-
mission basis.

In your letter of October 1, 1940, supplemented
by another from you dated October 30, 1940, you submit to
us the following facts: Mr. J. M. Cook of Dallas, Texas,
is a sales agent for L. B. Billingsly Machine and Supply
Company of Dallas, which company sells dry cleaning and
laundry machinery and equipment. When Mr. Cook sells an
order of goods for said company, he receives a commission
varying from nine to twenty percent on the sale price. Mr.
Cook has acquired a truck and proposes to make delivery
of machinery and equipment sold by him. We are advised
that the Billingsly Company has nothing to do with the de-
livery of equipment to Mr. Cook's customers. The company
has one price on all equipment and the price is figured
f. o. b. Dallas. There is no change made in the price
and it does not matter whether Mr. Cook delivers the equip-
ment or whether it is shipped by truck line. In any event
the price to be paid by the customer is the same. Mr. Cook
and the Billingsly Company have no agreement pertaining to
the delivery of the equipment sold by Mr. Cook, the latter
simply doing the same as a personal business advantage.

Honorable James E. Kilday, Page 2

As we understand, Mr. Cook's commission is the same whether he delivers it or not. In connection with the sale, Mr. Cook ordinarily agrees to deliver the machinery to the customer and make the installation. You request our opinion in response to three questions reading as follows:

"First

"Is this a carriage of goods for hire or compensation within the meaning of the Motor Carrier Act?

"Second

"If you answer the foregoing question in the affirmative, then what character or authorization should Mr. Cook have from this Commission in order lawfully to haul said goods?

"Third

"Is it unlawful under the Texas Motor Carrier Act for Mr. Cook to perform the truck service mentioned above without any manner of authority from this Commission?"

The regulation of motor carriers in Texas is provided by Article 911b, Vernon's Civil Statutes. Subdivisions (g) and (h) of Section 1 and Sections 2 and 3 of said Article read as follows:

"(g) The term 'motor carrier' means any person, firm, corporation, company, co-partnership, association or joint stock association, and their lessees, receivers or trustees appointed by any Court whatsoever, owning, controlling, managing, operating or causing to be operated any motor propelled vehicle used in transporting property for compensation or hire over any public highway in this State, where in the course of such transportation a highway between two or more incorporated cities, towns or villages is traversed; provided that the term 'motor carrier' as used in this Act shall not include, and this Act shall not apply to motor vehicles operated exclusively within the

Honorable James E. Kilday, Page 3

incorporated limits of cities or towns.

"(h) The term 'contract carrier' means any motor carrier as hereinabove defined transporting property for compensation or hire over any highway in this State other than as a common carrier. (Acts 1929, 41st Leg., p. 698, ch. 314, as amended Acts 1931, 42nd Leg., p. 480, ch. 277, § 1.)

"Sec. 2. No motor carrier, as defined in the preceding section, shall operate any motor propelled vehicle for the purpose of the transportation of carriage of property for compensation or hire over any public highway in the State except in accordance with the provisions of this Act; provided, however, that nothing in this Act or any provision thereof shall be construed or held to in any manner affect, limit or deprive cities and towns from exercising any of the powers granted them by Chapter 147, Pages 307 to 318, inclusive, of the General Laws of the State of Texas passed by the 33rd Legislature or any amendments thereto. (Acts 1929, 41st Leg., p. 698, ch. 314, as amended Acts 1931, 42nd Leg., p. 480, ch. 277, § 2.)

"Sec. 3. No motor carrier shall, after this Act goes into effect, operate as a common carrier without first having obtained from the Commission, under the provisions of this Act, a certificate of public convenience and necessity pursuant to a finding to the effect that the public convenience and necessity require such operation. No motor carrier shall, after this Act goes into effect, operate as a contract carrier without first having obtained from the Commission a permit so to do which permit shall not be issued until the applicant shall have in all things complied with the requirements of this Act. (Acts 1929, 41st Leg., p. 698, ch. 314, as amended Acts 1931, 42nd Leg., p. 480, ch. 277, § 3.)"

We understand that the operation in question contemplates the carriage of property over the public highways in this State, where in the course of such transportation highways between two or more incorporated cities, towns or

Honorable James E. Kilday, Page 4


villages would be traversed. In determining whether Mr. Cook would be subject to regulation by the Railroad Commission, we are confronted with only the one question as to whether he would be "transporting property for compensation or hire."

In the case of New Way Lumber Company vs. Smith, 96 S. W. (2d) 282, the Lumber Company was making delivery of lumber in its own trucks, making an extra charge for hauling such lumber, based upon weight of truck and distance traveled. The Supreme Court held in that case that such operation was that of a contract carrier and in violation of the statute, since no permit was held which authorized such carriage. From the opinion we quote:

"Under the facts stated here the carrying of lumber owned by the company in its own trucks does not exempt it from the provisions of this law. This is not a case where the trucks are operated exclusively within the incorporated limits of a town or city; nor is it a case where the price of the goods delivered is the same as those undelivered. On the contrary, it is clearly a case where the price of the lumber includes a direct charge for the delivery thereof. The carrying charge is based directly on the distance traveled and the weight of the truck. Since the company receives compensation for the delivery of the lumber, it clearly appears that the trucks used come under the definition of a 'contract carrier,' and are subject to the provisions of article 911b."

The difference between the New Way Lumber Company Case and the one at hand is readily apparent. There is no difference in the cost to the customer whether the property is delivered to him or whether he goes to the place of business of the Billingsly Company and gets it. Judge Sharp was careful to point out in his above opinion that it was not "a case where the price of the goods delivered is the same as those undelivered." It is our opinion that the statute was never meant to regulate such a carriage as the one shown in the facts presented by you. Doubtless, in a way, Mr. Cook will be compensated for his efforts in transporting this machinery and equipment in that he will be able to make more sales and therefore increase his commissions.

Honorable James E. Kilday, Page 5

Nevertheless, we believe that his compensation is in the nature of a commission for making the sale and is not compensation or hire for transporting the machinery over the highways. We answer both your first and third questions in the negative, making an answer to your second unnecessary.

<div style="margin-left: 40%">

Yours very truly

ATTORNEY GENERAL OF TEXAS

BY   /s/   Glenn R. Lewis

Glenn R. Lewis
Assistant

</div>

GRL:ew:et

APPROVED NOV. 6, 1940

/s/ Gerald C. Mann

ATTORNEY GENERAL OF TEXAS

APPROVED BY THE OPINION COMMITTEE
BY /s/ BWB, Chairman